**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0926-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FAQUAN MARTIN, a/k/a BIRTH
AL-FUQUAN MARTIN, ALFUQUAN
MARTIN, FUQUAN J. MARTIN,
FUQUA MARTIN and DEVIN M. MAYS,

    Defendant-Appellant.

_____

Submitted May 22, 2018 — Decided June 22, 2018

Before Judges Fasciale and Moynihan.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment No. 14-
10-2513.

Joseph E. Krakora, Public Defender, attorney
for appellant (Michael Denny, Assistant Deputy
Public Defender, of counsel and on the brief).

Robert D. Laurino, Acting Essex County
Prosecutor, attorney for respondent (Kayla
Elizabeth Rowe, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

Defendant Faquan Martin appeals from his jury-verdict convictions for third-degree receiving stolen property, N.J.S.A. 2C:20-7(a) (count three); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count four); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count five); fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f)(1) (count seven); second-degree eluding, N.J.S.A. 2C:29-2(b) (count eight); fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2) (count ten); and first-degree witness tampering, N.J.S.A. 2C:28-5 (count twelve). He was found not guilty of second-degree conspiracy, N.J.S.A. 2C:5-2 (count one); first-degree carjacking, N.J.S.A. 2C:15-2 (count two); third-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1) (count six); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a) (count nine); and first-degree robbery, N.J.S.A. 2C:15-1 (count eleven). He contends:

> POINT I
>
> THE STATE DID NOT PROVE BEYOND A REASONABLE DOUBT THAT A REASONABLE PERSON COULD CONCLUDE THAT [DEFENDANT]'S CONDUCT COULD CAUSE A WITNESS TO TESTIFY FALSELY.
>
> POINT II
>
> THE TRIAL COURT IMPROPERLY RAN SEPARATE CHARGES STEMMING FROM THE SAME CONDUCT CONSECUTIVELY AND IMPOSED AN EXCESSIVE SENTENCE.

2

We are not persuaded by either argument and affirm.

Defendant — whose motion for judgment of acquittal was denied by the trial judge — claims his witness tampering conviction was unsupported by the State's evidence. The tampering charge was engendered by a letter defendant wrote to the juvenile, A.W.,[1] who, the State contended, was with defendant when he committed the precedent crimes. The letter[2] and accompanying affidavit,[3] sent

---

[1] We refer to the juvenile co-defendant by his initials.

[2] As best we can decipher from the copy of the letter provided in his appendix, defendant wrote:

> What'[s] good BRO, you on some bull shit, I told you I'ma gon take the [(illegible)] elude, all you had to do was sign a[n] affidavit [and] cut me loose from the [(illegible)]. If you already took it, you letting all these [(illegible)] nigga[]s put shit inside your head, we better than that, you gon let me go down for something you already took[.] If I go down for [thirty] year[]s you better hope we never cross path[]s. We suppose to be brother[]s, but it's my bad[.] I thought you was a real nigga. I'ma the only nigga that did something for you when you came home, now you all big headed. My word[]s are short. Write back.

[3] "Affidavit" is the term used in the document, but the document does not conform to the requirements of Rule 1:4-4(a). It reads:

> I'ma [A.W.] and I'ma writing this affidavit on my own behalf to say I'ma the carjacker of [the victim]. I cop[p]ed out to the charges as a juvenile. Faquan Martin ain't have

to A.W. at the Bordentown juvenile facility, were intercepted there before the documents reached A.W.

Defendant maintains in order to prove that he "knowingly engaged in conduct which a reasonable person would believe would cause a witness . . . to testify or inform falsely,"[4] the jury had to have been presented with "some evidence that the letter had been received by [A.W.] for them to conclude it would be likely to cause him to testify falsely." Defendant submits the evidence, considered in the light most favorable to the State, "showed that [he] sent the letter intending for [A.W.] to be influenced, but because it was intercepted, there was no proof that he could have

---

> nothing to do with it at all. I seen Mr. Martin walkin'[,] I[] ask[ed] him did he need a ride[.] He said yes but he wanted to drive[.] I let Mr. Martin drive. He put his gun under the seat. Then after a short drive that's when the chase took place[.] The end.
>
> PS, I'ma willing to [testify] on my own behalf.
>
> Sincerely,
>
> [A.W.]

[4] N.J.S.A. 2C:28-5(a)(1) provides in pertinent part: "[a] person commits an offense if, believing that an official proceeding or investigation is pending or about to be instituted or has been instituted, he knowingly engages in conduct which a reasonable person would believe would cause a witness or informant to . . . [t]estify or inform falsely."

A-0926-16T4

been." Because the crime was not completed, and the jury was not instructed to "consider attempt," he prays we "vacate his conviction and enter a judgment of acquittal."

Defendant's appeal, grounded in the insufficiency of the evidence — not that the verdict was against the weight of the evidence — requires us to apply the same standard as that used by the trial court in determining a motion for judgment of acquittal under Rule 3:18-1.[5] State v. Moffa, 42 N.J. 258, 263 (1964). When deciding a motion for judgment of acquittal at the conclusion of the State's case a trial court must consider "whether the evidence at that point is sufficient to warrant a conviction of the charge involved." State v. Reyes, 50 N.J. 454, 458 (1967). Specifically, the trial court must determine "whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial," and giving the State the benefit of all reasonable inferences, "a reasonable jury could find guilt of the charge beyond a reasonable doubt." Id. at 458-59.

The 2008 amendments to the tampering statute replaced the element that a defendant "knowingly attempt[] to induce or otherwise cause a witness or informant to . . . [t]estify or inform

---

[5] Rule 3:18-1 mandates the trial court to enter a judgment of acquittal "if the evidence is insufficient to warrant a conviction" on any indicted charge.

falsely." L. 2008, c. 81. The revised statute requires the State prove defendant "knowingly engage[d] in conduct which a reasonable person would believe would cause a witness . . . [t]o testify or inform falsely." N.J.S.A. 2C:28-5(a)(1). Thus, contrary to defendant's argument, "attempt" — no longer an element of the crime — need not have been charged to the jury. Defendant did not object to the charge; in fact, he agreed to it. We therefore determine the jury instruction given by the trial judge, which largely followed the model jury charge,[6] was not clearly capable of producing an unjust result. R. 2:10-2.

We also determine there was sufficient evidence to support the tampering verdict. Like the former statute where the crime was deemed completed if a defendant knowingly attempted to induce a witness to falsely testify, tampering under the new law is perpetrated "regardless of whether or not the result is achieved." State v. Speth, 323 N.J. Super. 67, 87 (App. Div. 1999). A defendant need only "engage[] in conduct" which reasonably can be believed to cause a witness to falsely testify. See N.J.S.A. 2C:28-5(a)(1). As we recognized in Speth:

> Satisfying this requirement alone to support
> a conviction is sufficient to meet the
> societal need to discourage or preclude

---

[6] Model Jury Charges (Criminal), "Tampering with Witnesses and Informants (N.J.S.A. 2C:28-5(a)) (Cases arising after September 10, 2008)" (approved Mar. 16, 2009).

A-0926-16T4

persons from interfering in the proper administration of justice. The evil to be addressed is approaching the witness rather than the likelihood of successfully convincing that witness not to testify or to alter such testimony.

[323 N.J. Super. at 87.]

There is no requirement that a defendant's aim be realized or that the intended target know of the defendant's conduct. It is of no moment, therefore, that defendant's letter never reached A.W. Defendant's act of sending the letter to A.W., considering the letter's overtly threatening language, was conduct which a reasonable person would believe would cause A.W. to falsely testify.

Defendant did not specify in his notice of appeal or criminal case information statement that he was appealing from the trial judge's denial of his motion for a new trial. His merits brief arguments are couched in terms applicable to a Rule 3:18-1 motion; his response brief acknowledges that his argument relates to his motion for judgment of acquittal. If, in fact, the denial of the new trial motion is a ground for appeal, we do not determine under the foregoing analysis that "it clearly and convincingly appears that there was a manifest denial of justice under the law." R. 3:20-1; Dolson v. Anastasia, 55 N.J. 2, 6-7 (1969) (quoting R. 4:49-1).

Defendant was sentenced by Judge Michael L. Ravin to state prison terms of: four years for receiving stolen property (count three), consecutive to seven years with three and one-third years of parole ineligibility for possession of a weapon for an unlawful purpose (count five), consecutive to eight years for eluding (count eight), consecutive to seventeen years for witness tampering (count twelve); he also received eighteen-month prison terms for two fourth-degree charges which were concurrent to each other and concurrent to the other sentences imposed.

In determining to run sentences concurrently or consecutively pursuant to N.J.S.A. 2C:44-5(a), judges are required to consider the factors pronounced in State v. Yarbough, 100 N.J. 627, 643-44 (1985) (footnote omitted):

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
>> (a) the crimes and their objectives were predominantly independent of each other;
>>
>> (b) the crimes involved separate acts of violence or threats of violence;
>>
>> (c) the crimes were committed at different times or separate places,

A-0926-16T4

rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous.

(4) there should be no double counting of aggravating factors; [and]

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense.

"When a sentencing court properly evaluate[d] the Yarbough factors in light of the record, the court's decision will not normally be disturbed on appeal." State v. Miller, 205 N.J. 109, 129 (2011).

We are unconvinced by defendant's arguments that concurrent sentences were warranted because the crimes defendant committed were "inseparable parts of the same incident" and that the "objectives of each crime . . . were intertwined." In sentencing defendant, Judge Ravin both considered the Yarbough factors, 100 N.J. at 643-44, and complied with the Court's mandate that "the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision," id. at 643. In fact, Judge Ravin carefully parsed each Yarbough factor as it related to each count sentenced and we affirm the imposition

of consecutive sentences for the reasons set forth in his comprehensive and thoughtful oral statement of reasons.

We are also unpersuaded that defendant's sentence was excessive, particularly rejecting defendant's argument that the seventeen-year sentence for witness tampering was inappropriate because the letter was never received by the intended recipient and was "mildly threatening." Again, the fact that the letter — which, as we observed, contained an overt threat — was not received does not nullify defendant's intent to discourage or stop A.W. from testifying against him, the exact behavior the statute was intended to prevent.

Judge Ravin found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk of defendant committing another offense); nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law); and thirteen, N.J.S.A. 2C:44-1(a)(13) (possession of a stolen vehicle while in the course of committing or attempting to commit the crime, including immediate flight therefrom). He found no mitigating factors. He recognized that "[a]lthough [defendant] does not have an adult record, he was [nineteen] at the time of the present offenses and he'd already amassed a lengthy juvenile record at that time, which included charges of receiving stolen property, theft, burglary, resisting arrest, possession of [controlled dangerous substance], and

unlawful possession of a weapon." Judge Ravin noted defendant, as a juvenile, "received the benefit of deferred dispositions, dismissals and probation, [and] juvenile detention center, [but] none of that has deterred him from breaking the law." He fully complied with the mandate that a sentencing judge "must 'state reasons for imposing such sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence.'" State v. Fuentes, 217 N.J. 57, 73 (2014) (alteration in original) (quoting R. 3:21-4(g)).

We apply a deferential standard of review to a trial court's sentence and do not "substitute [our] judgment" for that of the judge. State v. Case, 220 N.J. 49, 65 (2014). "When the aggravating and mitigating factors are identified, supported by competent, credible evidence in the record, and properly balanced, we must affirm the sentence and not second-guess the sentencing court, provided the sentence does not 'shock the judicial conscience.'" Ibid. (citations omitted). We defer to Judge Ravin's well-supported sentence which does not shock our conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11 A-0926-16T4